UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON WILLIAMS,
Plaintiff,
-v-

NORTH LANSING OPCO, LLC, d/b/a
THE MEDILODGE GROUP, INC.,
Defendant.

No. 1:19-cv-826

Honorable Paul L. Maloney

# OPINION

This matter is before the Court on Defendant's motion for summary judgment (ECF No. 29). For the reasons to be explained, the motion will be granted.

## I.

Defendant North Lansing Opco, LLC, d/b/a The Medilodge Group, Inc., ("Medilodge") is a federally regulated long-term skilled nursing facility. Plaintiff Shannon Williams was hired by Medilodge in April 2018 as a respiratory therapist (Complaint, ECF No. 1 at ¶ 10). When she began her employment, she acknowledged Medilodge's Storage of Medication policy, which states:

> 7. Compartments including but not limited to drawers, cabinets, rooms, refrigerators, carts and boxes containing drugs and biologicals shall be locked when not in use and trays or carts used to transport such items shall not be left unattended if opened or otherwise potentially available to others.
>
> . . .
>
> 10. Only persons authorized to prepare and administer prescription medications shall have access to the prescription medications storage area including any keys. Overflow OTC medications may be stored in the central supply behind a locked door.

(ECF No. 29-7; *see also* Williams deposition, ECF No. 29-2 at PageID.138).

While Williams was employed by Medilodge, she moved several times, but she did not submit any address changes to Medilodge (*Id.* at PageID.148). And in October 2018, Williams was transferred to Defendant's East Lansing location (*Id.* at PageID.137).

In approximately June 2019, Williams became pregnant (Complaint, ECF No. 1 at ¶ 20). She informed her direct supervisor, Melissa Kniff, shortly thereafter. Williams experienced severe morning sickness because of her pregnancy, so her OB/GYN prescribed that she eat every hour. Because of the severe morning sickness, Williams had to call in sick on several occasions. Kniff suggested that Williams utilize leave under the Family Medical Leave Act[1] ("FMLA"), but Williams declined to do so (*see* ECF No. 29-11).

On June 4, 2019, Williams was treating a patient.[2] She went into the patient's room to "give him his breathing treatment" (Williams deposition, ECF No. 29-2 at PageID.149). The patient refused care (*Id.*). Williams left the patient's room and spoke to another respiratory therapist, Ramon Rodriguez, who said something to the effect of, "we're going to have a talk with him" (*Id.*). Williams and Rodriguez returned to the patient's room, where Rodriguez pulled the patient's mask up over his nose, pinched the patient's nose, and told Williams to do the treatment (*Id.*). Williams "froze" and did not stop Rodriguez or intervene (*Id.*).

A week later, the patient complained that Rodriguez attempted to strangle him. Medilodge Administrator Katie Pung called the East Lansing Police Department ("ELPD"). Pung, Rodriguez, and Williams all participated in the ELPD's investigation (*see* ELPD

---

[1] 29 U.S.C. § 2601 *et seq.*
[2] To protect the patient's privacy, their name is not included in the record or this opinion.

Report, ECF No. 29-12). Medilodge also conducted an internal investigation (Pung deposition, ECF No. 29-3 at PageID.175). Both Rodriguez and Williams were suspended pending the internal investigation, and both were counseled on customer service and following patient preferences. (*Id.* at PageID.17; *see also* ECF No. 29-11). The ELPD's investigation was closed without further action (ECF No. 29-12 at PageID.263).

On July 18, 2019, Williams reported to work a regularly scheduled shift (Williams deposition, ECF No. 29-2 at PageID.142). She treated at least two patients before she experienced a bout of morning sickness (Patient Records, ECF No. 29-15 and 29-16). At some point, Williams went to the bathroom and then decided to take a morning break (Williams deposition, ECF No. 29-2 at PageID.142). When she left the building, she left the keys to the locked medication cart sitting next to the cart (*Id.* at PageID.143). From outside the building, Williams texted a coworker, Karey Burnett, that she would be leaving for the day (*Id.* at PageID.142-43). Williams had not finished the requisite charting for the two patients she had treated, nor had she punched out, but at 9:39 a.m., Williams texted Kniff saying she had to leave for the day (*Id.*). Kniff responded by asking where the keys to the medication cart were. (*Id.* at PageID.143). Then, Kniff texted Williams: "Well, you just left the floor without giving report and my knowledge beforehand. That is not okay. I have no issue if you had to go home but just leaving without telling me first is abandonment." (*Id.*; *see also* text messages at ECF No. 29-17, PageID.277). At about 2:30 p.m. that afternoon, Williams texted Kniff asking for "FMLA papers." (*Id.*). Kniff responded that they would need to talk on the phone; Williams did not want to speak on the phone. (*Id.*).

The same day, Pung and Kniff began discussing terminating Williams' employment (Pung deposition, ECF No. 29-2 at PageID.176).

The following day, Williams had an appointment with her doctor, Dr. Melissa Halvorson, who wrote her a note excusing her from work for the period July 19 to August 9, 2019 (ECF No. 34-12). The Doctor's office stated that it would fax that letter to Defendant. Defendant never received the fax (Williams deposition, ECF No. 29-2 at PageID.142).

After Williams spoke with her doctor, Kniff texted her again:

> You left without my knowledge and no report or charting done. That is not okay. I understand if you need to go but this is definitely not good. You didn't punch out. You left your shift and your residents without appropriate coverage. This is abandonment of your job. Do you realize that? Texting Karey you are leaving with no explanation is not a way to leave your shift.

(*Id.* at PageID.144; *see also* ECF No. 29-17 at PageID.280).

Williams responded that she was concerned with her baby's safety and that she would fax her paperwork over the following day. (*Id.*). Again, Kniff asked Williams to speak on the phone or face-to-face, but Williams was adamant that they could converse appropriately via text message. (*Id.* at PageID.144-45).

On the evening of July 19, Defendant terminated Williams' employment because she left the premises without permission (*see* Personnel Action Request, ECF No. 34-13). Pung testified that while Williams had had issues with tardiness and attendance in the past, the primary reason she was terminated was that she walked off the job on July 18 (Pung deposition, ECF No. 29-3 at PageID.179).

On August 1, 2019, Defendant's third-party benefits administrator Infinisource mailed Williams a Notice of Continuation of Healthcare Coverage to an address in Pinckney, Michigan (ECF No. 29-18).

On October 10, 2019, Williams filed a complaint bringing four claims: I) retaliation and interference under the FMLA; II) sex discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act[3] ("ELCRA"); III) violation of the Consolidated Omnibus Budget Reconciliation Act of 1985[4] ("COBRA"); and IV) violation of the Michigan Whistleblowers' Protection Act[5] ("WPA"). On January 15, 2021, Defendant filed the instant motion for summary judgment (ECF No. 29). The Court has determined that oral argument is unnecessary. *See* W.D. Mich. L.Civ.R. 7.2(d).

**II.**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be

[3] M.C.L. § 37.2101 *et seq*.
[4] 29 U.S.C. § 1161 *et seq*.
[5] M.C.L. § 15.361 *et seq*.

viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks removed). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.

### A.

Count I of Williams' complaint alleges that she was subject to retaliation and interference in violation of the FMLA. Defendant is entitled to summary judgment on this claim for two reasons.

First, Williams did not give notice to Medilodge that she was attempting to use FMLA before she left. To establish a prima facie case of FMLA interference, an employee must show that she notified her employer of her intent to take leave and that the employer denied her rights to which she was entitled, including that she followed the employer's policy. *Demayanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014). An employee that only invokes FMLA's protection after she has already been disciplined cannot "retroactively invoke a right she previously chose not to exercise." *Amstutz v. Liberty Center Board of Education*, 127 F. Supp. 3d 846, 854 (N.D. Ohio 2015).

Kniff suggested that Williams should use FMLA time on July 16, but Williams explicitly declined to do so. At no point did Williams submit the internal paperwork to Medilodge to begin the FMLA process, nor was Medilodge ever made aware that Williams sought to use FMLA. Williams attempted to have her doctor's office send a communication to Medilodge, but that communication was never received by Medilodge. Medilodge was never on notice of Williams' intent to use FMLA leave. And, in any event, the Court notes that the letter from Williams' physician was dated July 19 and excused her absence

"immediately," but not retroactively. There is no record evidence that Williams ever initiated the FMLA leave process on July 18, 2019, beyond sending a text to Kniff seeking "FMLA papers." Williams admitted this in her deposition (Williams Deposition, ECF No. 29-2 at Page 31). Williams understood that some formal communication was necessary, but she did not act on that understanding. Accordingly, the Court concludes that Williams never availed herself of her rights under the FMLA: Medilodge was never on notice that Williams intended to take FMLA leave. Thus, Williams' claim for violations of the FMLA is meritless.

Second, even if Williams had successfully used FMLA time on July 18, Medilodge had a legitimate, nondiscriminatory reason to terminate her: Williams abandoned her position on July 18, leaving the keys to the medication cart on top of the locked cart, before completing patient care charting, and without notifying her supervisor in advance. This series of actions violated several Medilodge policies, and the Court finds that these facts together are sufficient grounds for termination. Therefore, Medilodge had legitimate, nondiscriminatory reasons to terminate Williams' employment, and Medilodge is entitled to summary judgment on Count I.

**B.**

In Count II, Williams alleges that she was treated differently because she was pregnant, in violation of ELCRA.

ELCRA prohibits an employer from discriminating against employees because of their sex. M.C.L. § 37.2202(1)(a). Pregnancy discrimination is included within meaning of "sex" under ELCRA. M.C.L. § 37.2201(d). To state a prima facie case of pregnancy discrimination, Williams must show that (1) she was pregnant, (2) she was subjected to an

adverse employment action, (3) she was qualified for her position, and (4) there is a nexus between her pregnancy and the adverse employment decision. *Lyman v. Toundas Motor Sports Group, Inc.*, No. 271428, 2007 WL 705035, at *2 (Mich. Ct. App. March 8, 2007) (citing *Hazle v. Ford Motor Co.*, 628 N.W.2d 515 (Mich. 2001)). Adverse employment decisions are material adverse changes—"that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Chen v. Wayne State University*, 771 N.W.2d 820, 839 (Mich. Ct. App. 2009). Generally, adverse employment actions are similar to termination, demotion in wage or salary, a lesser title, a reduction in benefits, or significantly diminished responsibilities. *Id.*

The only adverse employment action that Williams has identified was Kniff allegedly denying Williams' requested accomodations for eating. The Court notes that there is some question of fact on this issue—Williams alleges that she was not provided alternate locations to eat (Williams Declaration, ECF No. 34-4 at ¶ 8), but Kniff told Williams she could eat in Kniff's office or the break room (text messages, ECF No. 29-17 at PageID.278)—but ultimately, the difference is immaterial. Even taking Williams' position as true, Medilodge did not take an adverse employment action against her by denying her request to eat in a different location. A change in snack location does not rise to the level of an adverse employment decision. And in any event, there is no nexus between where Williams chose to eat and her termination: Pung testified that primary reason Williams was terminated was for the events of July 18, and there is no record evidence that the snack-location issue was on anyone's mind on that day.

To the extent that Williams argues that the adverse employment action at issue was her termination, the Court finds that unpersuasive because, as described above, Medilodge had legitimate, nondiscriminatory reasons to terminate Williams' employment. Medilodge is entitled to summary judgment on Count II.

C.

Count III alleges that Medilodge violated COBRA because Medilodge's benefits administrator, Infinisource, mailed a COBRA notice to Williams' old address. COBRA requires an employer to provide employees and qualified beneficiaries with notification of their right to receive continued health insurance benefits within a specific period of time after a qualifying event. *Jordan v. Tyson Foods, Inc.*, 257 F. App'x 972, 978 (6th Cir. 2007). It is reasonable and sufficient for an employer to send a COBRA notice to an employee's last known address. *See Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 906 (W.D. Mich. 2002).

Infinisource sent the requisite COBRA notice to Williams' last known address (*see* Declaration of Records Keeper, ECF No. 39-3).[6] This satisfied Medilodge's obligation under COBRA. *Id.* Williams has failed to show any prejudice to her or bad faith on Medilodge's part, and the Court declines to impose a penalty in the absence of such a showing. *See, e.g., Burgess v. Adams Tool & Engineering*, 908 F. Supp. 473, 478-79 (W.D. Mich. 1995). Medilodge is entitled to summary judgment on Count III.

---

[6] The Court acknowledges Williams' argument that Medilodge's initial declaration that this letter was sent by Infinisource may have been hearsay evidence, but Exhibit 22 (ECF No. 43-1) is a regularly kept business record, and it is admissible evidence.

**D.**

Finally, Williams argues that Medilodge violated the WPA because it terminated her for participating in the ELPD's investigation of abuse. But contrary to Williams' assertions, there is no record evidence beyond her own speculation that participation in the investigation was related to her termination.

To establish a prima facie case under the WPA, a plaintiff must show a causal connection exists between the protected activity and the discharge. M.C.L. § 15.362; *Pace v. Edel-Harrelson*, 878 N.W.2d 784, 787 (Mich. 2016). More than a temporal connection is required. *Debano- Griffin v. Lake County Board of Comm'rs*, 828 N.W.2d 634, 639 (Mich. 2013). Where a plaintiff "has merely shown that she was terminated *after* the protected activity occurred, not *because* of it, she has failed to satisfy the causation element of a prima facie case under the WPA". *Saulter v. Detroit Area Agency on Aging*, 562 F. App'x 346, 355-56 (6th Cir. 2014).

Williams has not pointed to any evidence beyond her own statement that she believed she was terminated for participating in the ELPD investigation. True, Williams was terminated *after* she participated in the investigation, but there is no evidence to show that she was terminated *because* of her participation. Without any evidence to support such a claim beyond Williams' self-serving speculation, Medilodge is entitled to summary judgment here.

**IV.**

The Court finds that no genuine questions of material fact remain, and that Defendant is entitled to summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendant North Lansing Opco, LLC's motion for summary judgment (ECF No. 29) is **GRANTED.**

Judgment to follow.

**IT IS SO ORDERED.**

Date: May 24, 2021

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge